### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Flap 2001, Inc. t/a/d/b/a Flapdoodles | : | |
| | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.: 02-CV-3265 |
| v. | : | |
| Kamikaze Kids Enterprises, Inc. | : | |
| Defendant. | : | |

### PLAINTIFF'S MOTION TO STRIKE AND/OR DISALLOW DEFENDANT KAMIKAZE KIDS ENTERPRISES, INC.'S PURPORTED CLAIMS OF EXEMPTION FROM GARNISHMENT

Flap 2001, Inc. t/a/d/b/a Flapdoodles ("Flapdoodles"), by and through its counsel, Adelman Lavine Gold and Levin, a Professional Corporation, hereby files this Motion to Strike and/or Disallow two purported claims of exemption in connection with Flapdoodles' garnishment (the "Claims of Exemption") which were filed by Defendant Kamikaze Kids Enterprises, Inc. ("KKE").

### BACKGROUND

1.    On May 28, 2002, Flapdoodles filed a complaint before this Court against, among others, KKE based upon KKE's failure to pay for clothing merchandise supplied to it by Flapdoodles.

2.    At the conclusion of a jury trial conducted on December 9-10, 2002, this Court granted Flapdoodles' motion for a directed verdict and entered judgment against, among others, KKE and in favor of Flapdoodles in the amount of $167,025.29.

3.      Flapdoodles pursued execution on account of its judgment against KKE and, in this connection, garnished one of KKE's bank accounts at Manufacturers & Traders Bank ("M&T Bank") on or about January 30, 2003.

4.      In response to Flapdoodles' interrogatories in aid of execution, M&T Bank informed Flapdoodles that it had approximately $49,000.00 on deposit in a bank account titled in the name of KKE.

5.      On or about January 27, 2003, KKE filed with this Court a Claim of Exemption, a copy of which is attached hereto as Exhibit "A."

6.      On January 30, 2003, KKE filed with this Court a second Claim of Exemption, a copy of which is attached hereto as Exhibit "B."

7.      As a result of the garnishment, KKE filed a motion before this Court seeking to stay Flapdoodles' execution efforts.  This Court entered an order dated February 6, 2003 denying KKE's motion without prejudice and staying further execution for ten (10) days so that KKE would have an opportunity to post a supersedeas bond as required by the applicable Pennsylvania Rules of Civil Procedure.[1]

8.      On February 14, 2003, before the temporary stay imposed by this Court's February 6, 2003 Order expired, KKE filed for protection pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  The case was docketed at Case No. 03-12330(DWS).

9.      On February 26, 2003, KKE filed a motion for expedited relief in the Bankruptcy Court purportedly seeking relief from Flapdoodles' garnishment of the M&T bank account.

---

[1]  The Pennsylvania Rules of Civil Procedure govern this matter.  See FRCP 69.

10.     On March 4, 2003, the Bankruptcy Court ordered M&T Bank to discontinue its freeze on KKE's bank account, but precluded KKE from utilizing any of the funds in the account pending a further hearing.

11.     On March 6, 2003, the Bankruptcy Court issued an order vacating its March 4, 2003 Order *nunc pro tunc* insofar as it directed M&T Bank to discontinue its freeze on KKE's account in connection with Flapdoodles' garnishment. The Order further specified that the garnishment remained effective and that M&T Bank was to hold such funds pending an order of the court granting Flapdoodles relief from the automatic stay or dismissal of the case. A true and correct copy of the Bankruptcy Court's March 6, 2003 Order is attached hereto as Exhibit "C".

12.     On March 14, 2003, Flapdoodles filed a motion before the Bankruptcy Court seeking to dismiss the bankruptcy case and seeking relief from the automatic stay. On April 22, 2003, the Bankruptcy Court issued an order granting Flapdoodles' motion and dismissing KKE's bankruptcy case. A true and correct copy of the Bankruptcy Court's April 22, 2003 Order is attached hereto as Exhibit "D."

13.     As a result of the Bankruptcy Court's April 22, 2003 Order dismissing KKE's bankruptcy case, the automatic stay of Section 362 of the Bankruptcy Code is no longer in place and Flapdoodles is free to continue execution efforts against KKE.

### RELIEF REQUESTED

14.     By this Motion, Flapdoodles respectfully requests that this Court issue an Order disallowing and/or striking the Claims of Exemption that were filed *pro se* by KKE.

**THE CLAIMS OF EXEMPTION ARE PROCEDURALLY DEFECTIVE**

15.    Rule 3123.1 of the Pennsylvania Rules of Civil Procedure sets forth the

procedure for issues concerning claims of exemption from execution.  They are as

follows:

      a.    A defendant may claim exemption or immunity of property
from levy or attachment by filing with the sheriff[2] a claim
substantially in the form provided by Rule 3252(a).  The
defendant may include in the claim a demand for prompt
hearing.  The sheriff shall immediately notify the plaintiff
and the garnishee of the filing of the claim.

      b.    The sheriff shall immediately present the matter to the
Court.  The Court shall hear the claim within five (5)
business days thereafter upon such notice to the parties as
the Court shall direct, and shall promptly dispose of the
matter on the testimony, admissions or other evidence.

      c.    Judgment may not be entered against the garnishee
pursuant to Rule 3146(b) until the expiration of twenty (20)
days from the date of service of the writ of execution upon
the garnishee.  If a claim for exemption is pending,
judgment pursuant to 3146(b) may be entered only by
agreement of the parties or by leave of court.  Pa. R.C.P.
Rule 3123.1.

16.    In this case, KKE filed its Claims of Exemption with the Clerk of Court

and not the U.S. Marshall as required by Rule 3123.1.  Accordingly, the Claims of

Exemption are procedurally defective and should be stricken.

**THE CLAIMS OF EXEMPTION ARE SUBSTANTIVELY DEFECTIVE**

17.    The Claims of Exemption filed by KKE do not set forth a valid basis for

exemption.  Rule 3123 of the Pennsylvania Rules of Civil Procedure requires a

defendant's exemption to be <u>statutorily</u> based.  Pa. R.C.P. 3123(a).  KKE's Claims of

Exemption are <u>not</u> statutorily based.  The notes to Rule 3123.1 of the Pennsylvania Rules

---

[2]    In this case, the United States Marshall.

of Civil Procedure list eight (8) categories of statutory exemption under Pennsylvania law

and five (5) categories of exemption under Federal law as follows:

### Pennsylvania Exemptions

1. Statutory $300 Exemption for Individuals
2. Particular Personal Property
3. Certain Retirement Funds
4. Certain Insurance Proceeds
5. Personal Earnings of Various Categories
6. Property on International Exhibit
7. Common Carrier Property
8. Veteran Benefits

### Federal Exemptions

1. Certain Wages and Compensation
2. Social Security Benefits
3. Retirement Funds
4. Veteran Benefits
5. Miscellaneous

18.    None of these enumerated exemptions are applicable to the present case.

Instead, KKE's exemptions purport to be grounded upon the following:

> Any and all exemptions permitted under the law. In
> addition, a complete exemption pending the appeal of the
> granting of the directed verdict for the plaintiff.
> (Exhibit A)

> A claim for exemption of property pursuant to a UCC-1
> form to be filed in the name of Ute A. Cherny.[3]
> (Exhibit B)

19.    KKE's Claims of Exemption are not the type contemplated by

Pennsylvania Rules of Civil Procedure 3123 and/or 3123.1, and do not form a proper

basis for a claim of exemption from Flapdoodles' garnishment. By way of example, no

exemption properly lies for "a complete exemption pending [KKE's] appeal". Moreover,

---

[3]  Ms. Cherny resides with KKE's principal, Charlene Piklo. Although KKE claims Ms. Cherny has a
security interest in all of KKE's assets, it is Flapdooodles' position that this alleged security interest is not
perfected in the cash on deposit in the M&T Account under the Uniform Commercial Code.

KKE cannot claim an exemption for the alleged secured claim of another.  In other words, KKE has no standing to claim an exemption on behalf of Ute A. Cherny.

20.    Accordingly, KKE's Claims of Exemption should be stricken and/or disallowed.

WHEREFORE, for the foregoing reasons, Flapdoodles respectfully requests that the Claims of Exemption of KKE filed on January 27, 2003 and January 30, 2003 be disallowed and/or stricken.

Respectfully submitted,

ADELMAN LAVINE GOLD and LEVIN,
a Professional Corporation

By: _____

Leon R. Barson, Esquire
Mark Pfeiffer, Esquire
1900 Two Penn Center Plaza
Philadelphia, PA  19102-1799
(215) 568-7515

Attorney for Flap 2001, Inc.
t/a/d/b/a Flapdoodles

DATED: March 8, 2003

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Flap 2001, Inc. t/a/b/d/a
Flapdoodles                                     :
                                                :
                                                :        CIVIL ACTION
                                                :
                        Plaintiff,              :        NO: 02-CV 3245
                                                :
            v.                                  :
                                                :
Kamikaze Kids Enterprises, Inc.                 :
                                                :
                        Defendant.              :        **FILED**
                                                :
                                                         IAN 2 7 2003
            _____

                    CLAIM FOR EXEMPTION                   MICHAEL E. KUNZ, Clerk

                                                         By _____ Dep. Clerk

TO THE U.S. MARSHAL:

I, the above named defendant, claim exemption of property from levy or attachment:

    (1)    From my personal property in my possession which has been levied upon,

        (a)    I desire that my $300 statutory exemption be
             (i) set aside in kind (specify property to be set aside in kind):

             (ii) paid in cash following the sale of the property levied upon; or

        (b)    I claim the following exemption (specify property and basis of exemption):

ANY AND ALL EXEMPTIONS PERMITTED UNDER THE
LAW.
IN ADDITION, A COMPLETE EXEMPTION PENDING
THE APPEAL OF THE GRANTING OF A DIRECTED
VERDICT FOR THE PLAINTIFF.

(2)     From my property which is in the possession of a third party, I claim the
following exemptions:

(a) my _____ nd
       (specify property): _____

(b) Soc___ ___ ___ ___ fits or deposit _____

(c) Other (specify amount and basis of exemption: *ANY & ALL EXEMPTIONS PERMITTED UNDER
THE LAW. IN ADDITION, A COMPLETE EXEMPTION PENDING THE APPEAL OF THE GRANTING
OF A DIRECTED VERDICT FOR THE PLANTIFF.*

I request a prompt court hearing to determine the exemption. Notice of the hearing should
be given to me at:

*500 N. YORK ROAD, WILLOWGROVE*          *215-349-0902*
       **(Address)**        *PA 19090*              **( Telephone number)**

I declare under penalty of perjury that the foregoing statements made in this claim for exemption
are true and correct.

Date: *1/27/03*        _____  *Kamikaze Kids Enterprises Inc*
                              **(Signature of Defendant)**

THIS CLAIM TO BE FILED WITH THE OFFICE OF THE U.S. MARSHAL FOR THE
EASTERN DISTRICT OF PENNSYLVANIA:

2110 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106
(215) 597-7272

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*CN*

(34)

FLAP 2001, INC

vs.

KAMIKAZE KIDS
ENTERPRISES, INC

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.

2:02-CV-03265

FILED

JAN 3 0 2003

MICHAEL E. KUNZ, Clerk

By _____ Dep. Cl

~~MORTON~~

# CLAIM FOR EXEMPTION

I, THE ABOVE NAMED DEFENDANT, CLAIM EXEMPTION OF PROPERTY
PURSUANT TO THE UCC-1 FORM ATTACHED HERETO.

I REQUEST A PROMPT COURT HEARING TO DETERMINE
THE EXEMPTION.

NOTICE OF THE HEARING SHOULD BE GIVEN TO ME
AT

JOSEPH J. SARACO
ATTORNEY FOR defendant

500 N. YORK ROAD
WILLOW GROVE, PA 19090
215-658-4640

PENNSYLVANIA DEPARTMENT OF STATE
CORPORATION BUREAU
UNIFORM COMMERCIAL CODE
P.O. BOX 8721
HARRISBURG, PA  17105-8721


UA CHERNY
73 OLD DUBLIN PIKE
#458
DOYLESTOWN PA  18901


DEBTOR:

        KAMIKAZE KIDS ENTERPRISES INC
        168 KING ROAD
        CHALFONT, PA  18914


SECURED PARTY:

        CHERNY, UTE ANN
        168 KING ROAD
        CHALFONT, PA  18914


EFFECTIVE DATE:   JUNE 10, 2002 AT 01:44 PM

FINANCING STATEMENT NUMBER:   36330646


For additional information, please visit our "Searchable
Database" at: WWW.DOS.STATE.PA.US/CORPS

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
UTE A. CHERNY   215-249-1137

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

U.A. CHERNY
75 OLD DUBLIN PIKE #45B
DOYLESTOWN, PA 18901

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KAMIKAZE KIDS ENTERPRISES, INC. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16B KING ROAD | CHALFONT | PA | 18914 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 23-3093522 | | CORP | PENNSYLVANIA | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| CHERNY | UTE | ANN | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16B KING ROAD | CHALFONT | PA | 18914 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

INVENTORY OF APPAREL & ACCESSORIES FOR 4 STORES
9 - COMPUTERS, PRINTERS, SOFTWARE PROGRAMS
2 - TICKET MACHINES
FIXTURES FOR 4 STORES IN ALL LOCATIONS
LEASE HOLD IMPROVEMENTS FOR 4 STORES
SUPPLIES IN ALL LOCATIONS
4 - REFRIGERATORS
4 - MICROWAVES
4 - FAX MACHINES
FURNITURE IN ALL LOCATIONS

GRAND TOTAL OF
LIEN $350,000.00

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

## SCHEDULE A
### to Uniform Commercial Code Financing Statement

The following types of personal property are covered by the financing statement to which this schedule is attached:

(i)    All accounts (the "Accounts"), as that term is defined in Section 9-106 of the Uniform Commercial Code as in effect from time-to-time in the Commonwealth of Pennsylvania (the "UCC"), including, without limitation, all accounts receivable, book debts and other forms of obligations, other than forms of obligations evidenced by Chattel Paper or Instruments, as those terms are defined below, now owned or hereafter received or acquired by or belonging or owing to the Debtor, including, without limitation, under any trade name, style or division thereof, whether arising out of goods sold or services rendered by the Debtor or from any other transaction, whether or not the same involves the sale of goods or services by the Debtor, including, without limitation, any such obligation which may be characterized as an account or contract right under the UCC, and all of the Debtor's rights in to and under all purchase orders or receipts now owned or hereafter acquired by it for goods or services, and all of the Debtor's rights to any goods represented by any of the foregoing, including, without limitation, unpaid seller's rights of rescission, replevin, reclamation or repossessed goods, and all monies due or to become due to the Debtor under all purchase orders and contracts for the sale of goods or the performance of services or both by the Debtor, whether or not yet earned by performance on the part of the Debtor or in connection with any other transaction, now in existence or hereafter occurring, including, without limitation, the right to receive the proceeds of such purchase orders and contracts, and all collateral security and guaranties of any kind given by any person with respect to any of the foregoing;

(b)    All chattel paper (the "Chattel Paper"), as that term is defined in Section 9-105(1)(b) of the UCC, now owned or hereafter acquired by the Debtor;

(c)    All contracts, undertakings, franchise agreements or other agreements (collectively, the "Contracts"), other than rights evidenced by Chattel Paper, Documents or Instruments, as those terms are defined below, in or under which the Debtor may now or hereafter have any right, title or interest, including, without limitation, with respect to an Account, any agreement relating to the terms of payment or the terms of performance thereof;

(d)    All documents (the "Documents"), as that term is defined in Section 9-105(1)(f) of the UCC, now owned or hereafter acquired by the Debtor;

(e)     All equipment (the "Equipment"), as that term is defined in Section 9-109(2) of the UCC, now or hereafter owned or acquired by the Debtor and, in any event, shall include, without limitation, all machinery, tools, dyes, equipment, furnishings, vehicles and computers and other electronic data processing and other office equipment, any and all additions, substitutions and replacements of any of the foregoing, wherever located, together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto;

(f)     All general intangibles (the "General Intangibles"), as that term is defined in Section 9-106 of the UCC, now owned or hereafter acquired by the Debtor and, in any event, shall include, without limitation, all right, title and interest which the Debtor may now or hereafter have in or under any Contract, all customer lists, Trademarks, as defined below, Patents, as defined below, right in intellectual property, interests in partnerships, joint ventures and other business associations, licenses, permits, copyrights, trade secrets, proprietary or confidential information, inventions, whether or not patented or patentable, technical information, procedures, designs, knowledge, know-how, software, data bases, data, skill, expertise, recipes, experience, processes, models, drawings, blueprints, catalogs, materials and records, goodwill including, without limitation, the goodwill associated with any Trademark, Trademark registration or Trademark licensed under any Trademark License, as defined below, claims in or under insurance policies, including unearned premiums, uncertificated securities, deposit accounts, rights to receive tax refunds and other payments and rights of indemnification;

(g)     All instruments (the "Instruments"), as that term is defined in Section 9-105(1)(i) of the UCC, now owned or hereafter acquired by the Debtor, including, without limitation, all notes and other evidences of indebtedness, other than instruments that constitute, or are a part of a group or writings that constitute, Chattel Paper;

(h)     All inventory (the "Inventory"), as that term is defined in Section 9-109(4) of the UCC, wherever located, now or hereafter owned or acquired by the Debtor and, in any event, shall include all inventory, merchandise, goods and other personal property which are held by or on behalf of the Debtor for sale or lease or are furnished or are to be furnished under a contract of service or which constitute raw materials, work in process or materials used or consumed or to be sued or consumed in the Debtor's business, or the processing, packaging, promotion, delivery or shipping of the same, and all finished goods, whether or not such inventory is listed on any schedules, assignments or reports furnished to the Secured Party from time-to-time and whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of the Debtor or is held by the Debtor or by others for the Debtor's account, including, without limitation, all goods covered by purchase orders and contracts with suppliers and all goods billed and held by suppliers and all inventory which may be located on premises of the Debtor or of any carriers, forwarding agents, truckers, warehousemen, vendors, selling agents or other persons;

(i)     All Patent Licenses (as defined below), Trademark Licenses, or other licenses of rights or interests now held or hereafter acquired by the Debtor (collectively, the "Licenses");

2

06/03/02   MON 10:22 FAX 2153433117          ASHBY LAW OFFICES, LCC                    ☑004

(j)    All of the following (collectively, "Patent Licenses") now owned or hereafter acquired by the Debtor: any written agreement granting any right with respect to any invention on which a Patent (as defined below) is in existence;

(k)    All of the following (individually, a "Patent" and collectively, the "Patents") in which the Debtor now holds and hereafter acquired any interest:  (i) all letters patent of the United States or any other country, all registrations and recordings thereof, and all applications for letters patent of the United States or any other country, including, without limitation, registrations, recordings and applications in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country and (ii) all reissues, continuations, continuations-in-part or extensions thereof;

(l)    All of the following (collectively, the "Trademark Licenses") now owned or hereafter acquired by the Debtor: any written agreement granting any right to use any Trademark or Trademark registration;

(m)    All of the following (collectively, "Trademarks") now owned or hereafter acquired by the Debtor: (i) all trademarks, tradenames, corporate names, business names, trade styles, service marks, logos, other source or business identifiers, prints and labels on which any of the foregoing have appeared or appear, designs and general intangibles of like nature, now existing or hereafter adopted or acquired, all registrations and recordings and applications in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country or any political subdivision thereof and (ii) all reissues, extensions or renewals thereof; and

(n)    All proceeds (the "Proceeds"), as that term is defined in Section 9-306(1) of the UCC, and in any event shall include, without limitation, (i) any and all Accounts, Chattel Paper, Instruments, cash and other proceeds payable to the Debtor from time-to-time in respect of any of the foregoing collateral security, (ii) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time-to-time with respect to any of the collateral security, (iii) any and all payment s(in any form whatsoever) made or due and payable to the Debtor from time-to-time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the collateral security by any governmental body, authority, bureau or agency (or any person acting under color of governmental authority) and (iv) any and all other amounts from time-to-time paid or payable under or in connection with any of the collateral security.

F:\COMM\RRM\UCC.SCH

3

**EXHIBIT C**

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| KAMIKAZE KIDS ENTERPRISES, INC., | : | Bankruptcy No. 03-12330DWS |
| | : | |
| Debtor. | : | |

## ORDER

**AND NOW**, this 6th day of March 2003, upon consideration of the Motion of the debtor to use Cash Collateral and the objections of the holder of such collateral, Flap 2001 a/k/a Flapdoodles ("Flapdoodles") and the United States trustee and for the reasons stated on the record of the hearing which shall constitute this Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 9014;

It is hereby **ORDERED** that:

1. The Motion is **DENIED**. Debtor may not use Flapdoodles cash collateral.

2. The Order of March 4, 2003 is **Vacated** *nunc pro tunc* insofar as it directed M&T Bank to discontinue its freeze of Debtor's bank account pursuant to Flapdoodles' garnishment. The garnishment remains effective, this Court finding that Flapdoodle is not adequately protected for the use of such funds. Unless this case is first dismissed, M&T shall hold such funds pending an order of court granting Flapdoodles relief from the automatic stay.

DIANE WEISS SIGMUND
United States Bankruptcy Judge

**EXHIBIT**

E-5

**EXHIBIT D**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | **CHAPTER 11** |
| | : | |
| Kamikaze Kids Enterprises, Inc. | : | |
| | : | **CASE NO. 03-12330 (DWS)** |

**ORDER GRANTING FLAP 2001, INC. T/A/D/B/A FLAPDOODLES
~~RELIEF FROM THE AUTOMATIC STAY AND~~ *MOTION*
DISMISSING DEBTOR'S CHAPTER 11 CASE**

AND NOW, this _____ day of _____, 2003, upon

consideration of the Motion of FLAP 2001, INC. t/a/d/b/a Flapdoodles ("Flapdoodles")

for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and/or Dismissal of

the Case (the "Motion"), and after notice and hearing thereon, and ~~for the reasons stated~~ *after an evidentiary hearing, the Debtor, by its principal* ~~on the record of the hearing which shall constitute this Court's findings of fact and~~ *Consenting to dismissal of this chapter 11 case* ~~conclusions of law pursuant to Fed.R.Bankr.P.9014,~~

It is hereby **ORDERED** that:

1. The Motion is GRANTED and Debtor's Petition under Chapter 11 of the

Bankruptcy Code is **DISMISSED**.

BY THE COURT:

_____
DIANE WEISS SIGMUND
United States Bankruptcy Judge

*4/22/03*

Interested Parties listed on the following page

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Flap 2001, Inc. t/a/d/b/a Flapdoodles          :<br><br>          :<br><br>Plaintiff,      :<br>     v.        :<br><br>Kamikaze Kids Enterprises, Inc.   :<br><br>Defendant.      :<br>                 : | CIVIL ACTION<br><br>NO.: 02-CV-3265 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND/OR DISALLOW DEFENDANT KAMIKAZE KIDS ENTERPRISES, INC.'S PURPORTED CLAIMS OF EXEMPTION FROM GARNISHMENT**

Plaintiff Flap 2001, Inc. t/a/d/b/a Flapdoodles ("Flapdoodles"), by and through its counsel, Adelman Lavine Gold and Levin, a Professional Corporation, submits this Memorandum of Law in Support of its Motion to Strike and/or Disallow Two Purported Claims of Exemption Filed by Defendant Kamikaze Kids Enterprises, Inc. ("KKE"). The capitalized terms herein shall have the same meaning as set forth in said motion.

I.    **FACTUAL BACKGROUND**

This matter involves two purported Claims of Exemption filed by the Defendant, KKE in connection with the garnishment of KKE's bank account effected by Flapdoodles pursuant to a writ of execution. The Claims of Exemption are baseless and should be stricken and/or disallowed.

By way of background, on May 28, 2002, Flapdoodles filed a complaint before this Court against, among others, KKE based upon KKE's failure to pay for clothing

merchandise supplied to it be Flapdoodles. The case was tried before a jury on December 9-10, 2002. At the close of evidence, this Court granted Flapdoodles' motion for a directed verdict and entered judgment against, among others, KKE and in favor of Flapdoodles in the amount of $167,025.29.

Flapdoodles pursued execution on account of its judgment against KKE and, in this connection, garnished one of KKE's bank accounts at Manufacturers & Traders Bank ("M&T Bank") on or about January 30, 2003. In response to Flapdoodles' interrogatories in aid of execution, M&T Bank informed Flapdoodles that it had approximately $49,000.00 on deposit in a bank account titled in the name of KKE.

Thereafter, KKE filed with this Court the Claims of Exemption.

In addition, KKE filed a motion before this Court seeking to stay Flapdoodles' execution efforts. This Court entered an order dated February 6, 2003 denying KKE's motion without prejudice and staying further execution for ten (10) days so that KKE would have an opportunity to post a supersedeas bond as required by the Pennsylvania Rules of Civil Procedure which are made applicable in this proceeding by F.R.C.P, Rule 69.

On February 14, 2003, before the temporary stay imposed by this Court's February 6, 2003 Order expired, KKE filed for protection pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The case was docketed at Case No. 03-12330(DWS).

On February 26, 2003, KKE filed a motion for expedited relief in the Bankruptcy Court purportedly seeking relief from Flapdoodles' garnishment of the M&T bank account. On March 4, 2003, the Bankruptcy Court ordered M&T Bank to discontinue its

freeze on KKE's bank account, but precluded KKE from utilizing any of the funds in the account pending a further hearing.

On March 6, 2003, the Bankruptcy Court issued an order vacating the March 4, 2003 Order *nunc pro tunc* insofar as it directed M&T Bank to discontinue its freeze on KKE's account in connection with Flapdoodles' garnishment. The Order further specified that the garnishment remained effective and that M&T Bank was to hold such funds pending further order of the Court.

On March 14, 2003, Flapdoodles filed a motion before the Bankruptcy Court seeking to dismiss the bankruptcy case and seeking relief from the automatic stay. On April 22, 2003, the Bankruptcy Court issued an order dismissing KKE's bankruptcy case. As a result of the Bankruptcy Court's April 22, 2003 Order dismissing KKE's bankruptcy case, the automatic stay of Section 362 of the Bankruptcy Code is no longer in place and Flapdoodles is free to continue execution efforts against KKE.

## II. LEGAL ARGUMENT

### A.  Defendant's Purported Claims of Exemption Are Without Merit and Should be Stricken and/or Disallowed.

Defendant's Claims of Exemption are without merit defective and should be stricken and/or disallowed.

#### 1.  Substantive Defects

Rule 3123 of the Pennsylvania Rules of Civil Procedure requires a defendant's exemption to be statutorily based. Pa. R.C.P. 3123(a). The notes to Rule 3123.1 of the Pennsylvania Rules of Civil Procedure list eight (8) categories of exemption under Pennsylvania law and five (5) categories of exemption under Federal law as follows:

## Exemptions under Pennsylvania Law

1.  General $300 statutory exemption, 42 Pa.C.S. § 8123 (not available to corporations)

2.  Particular personal property exemption-wearing apparel, bibles and school books, sewing machines, uniforms and equipment, 42 Pa.C.S. § 8124(a)

3.  Certain retirement funds and accounts, 42 Pa.C.S. § 8124(b)

4.  Certain insurance proceeds, 42 Pa.C.S. § 8124(c)

5.  Personal earnings, subject to the exceptions under 23 Pa.C.S. Pt. IV relating to divorce and for support, board, certain damages arising from a residential lease, and student loan obligations, 42 Pa.C.S. § 8127

6.  Tangible personal property on international exhibition, 42 Pa.C.S. § 8125

7.  Common carrier, property in interstate transit, 42 Pa.C.S. § 8126

8.  Certain veteran benefits

## Exemptions under Federal Law

1.  Certain wages and compensation

2.  Social Security benefits, 42 U.S.C. § 407

3.  Certain retirement funds and accounts

4.  Certain veteran and armed forces benefits

5.  Miscellaneous

None of these enumerated exemptions are applicable to the present case. Instead,

KKE's exemptions purport to be grounded upon the following:

> Any and all exemptions permitted under the law.  In
> addition, a complete exemption pending the appeal of the
> granting of the directed verdict for the plaintiff.
> (Exhibit A)

4

> A claim for exemption of property pursuant to a UCC-1
> form to be filed in the name of Ute A. Cherny.[4]
> (Exhibit B)

KKE's basis for the Claims of Exemption are not supported by statute or

otherwise. Notably, the Claims of Exemption fail to reference any specific state or

federal statutory exemption. More importantly, there is no statutory exemption available

to KKE in this case.

In sum, none of the statutory exemptions are applicable to the matter *sub judice*.

Accordingly, KKE's Claims of Exemption should be stricken and/or disallowed so that

Flapdoodles may continue its execution upon the M&T Bank account.

### 2.    Procedural Defects

In addition, Rule 3123.1 of the Pennsylvania Rules of Civil Procedure sets forth

the procedure for issues concerning claims of exemption from execution. They are as

follows:

a.    A defendant may claim exemption or immunity of property from levy or attachment by filing with the sheriff[5] a claim substantially in the form provided by Rule 3252(a). The defendant may include in the claim a demand for prompt hearing. The sheriff shall immediately notify the plaintiff and the garnishee of the filing of the claim.

b.    The sheriff shall immediately present the matter to the Court. The Court shall hear the claim within five (5) business days thereafter upon such notice to the parties as the Court shall direct, and shall promptly dispose of the matter on the testimony, admissions or other evidence.

c.    Judgment may not be entered against the garnishee pursuant to Rule 3146(b) until the expiration of twenty (20) days from the date of service of the writ of execution upon the garnishee. If a claim for exemption is pending, judgment pursuant to 3146(b) may be entered only by

---

[4]  Ms. Cherny resides with KKE's principal, Charlene Piklo.
[5]  In this case, the United States Marshall.

agreement of the parties or by leave of court.  Pa. R.C.P.
Rule 3123.1.

In this case, KKE filed its Claims of Exemption with the Clerk of Court and not

the Marshall as required by Rule 3123.1.  Although Flapdoodles knows of no case law

ruling that such a procedural error is fatally defective to a Claim of Exemption, it is

Flapdoodles' position that KKE has failed to comply with the express requirements of the

Pennsylvania Rules of Civil Procedure.  Accordingly, the Claims of Exemption are

procedurally defective and should be stricken.

WHEREFORE, Flapdoodles respectfully requests that the Claims of Exemption

of KKE filed on January 27, 2003 and January 30, 2003 be disallowed and/or stricken.


Respectfully submitted,

ADELMAN LAVINE GOLD and LEVIN,
a Professional Corporation


By: _____
Leon R. Barson, Esquire
Mark Pfeiffer, Esquire
1900 Two Penn Center Plaza
Philadelphia, PA  19102-1799
(215) 568-7515

Attorney for Flap 2001, Inc.
t/a/d/b/a Flapdoodles

DATED: May 8, 2003

## CERTIFICATE OF SERVICE

I, MARK PFEIFFER, ESQUIRE, hereby certify that a true and correct copy of the

foregoing Motion to Strike/Disallow Claims Exemptions was served by first-class mail,

postage prepaid, on this date upon the following parties:


Joseph Saraco, Esquire
500 North York Road
Willow Grove, PA 19090
Attorney for Kamikaze Kids, Enterprises, Inc.


Mark Pfeiffer, Esquire

Date: 5-6-03